ELECTRONIC

**Sep 24, 2014**

STEVEN M. LARIMORE
CLERK  U.S.  DIST.  CT,
S.D.  OF  FLA. · MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 14-60235-CR-BLOOM/VALLE
CASE NO._____

18 U.S.C. § 666(a)(2)
18 U.S.C. § 2

UNITED STATES OF AMERICA

v.

WILLIAM PINO,

Defendant.

_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### Background

1.      The Broward County Government was headed by a County Commission, which

consisted of a Mayor, a Vice-Mayor and seven (7) additional County Commissioners

representing the nine (9) districts within Broward County.  The Commission appointed a County

Administrator that oversaw the operations of Broward County through various departments,

including the Department of Public Works (hereinafter referred to as the "DPW").  The DPW

oversaw the construction and maintenance of the roadways and the seaports, the acquisition and

management of property, and the water management and waste recycling systems in Broward

County, among other functions.  One of the divisions of the DPW was the Broward County

1

Traffic Engineering Division (hereinafter referred to as the "BCTED"). The BCTED was responsible for constructing, repairing, and maintaining the traffic systems and signs on the roadways in Broward County. During calendar year 2012, Broward County received benefits in excess of $10,000 under a federal program involving grants, subsidies, loans, guarantees, insurance, and/or other federal assistance.

2.　　Defendant PINO had an ownership interest and/or assisted in the operation of a number of companies in South Florida that were in the business of installing, repairing, and maintaining street lights, traffic signals, and traffic systems and the sale of products needed to make such installations and repairs, such as light poles.

3.　　An individual (hereinafter referred to as "the Lighting Contractor") was also in the business of installing, repairing, and maintaining street lights, traffic signals, and traffic systems. Prior to 2012, the Lighting Contractor had partnered with PINO on numerous government projects involving street lights and traffic signals. In the past, PINO expressed to the Lighting Contractor that he would like to obtain contracts to sell his products to the county government in Broward County.

4.　　An individual who was an agent of the BCTED (hereinafter referred to as the "BCTED Public Official") was involved in the awarding of contracts related to the maintenance, repair, and construction of traffic systems, lighting and signs on the roadways in Broward County and was one of the officials involved in the selection of contractors to work on projects for the BCTED.

## The Bribe Payment

5.      On or about April 4, 2012, the Lighting Contractor advised PINO that there were upcoming public works projects in Broward County for traffic systems, traffic signs, street lights and light poles.  The Lighting Contractor further advised PINO that he had a contact in Broward County who could get the light poles sold by PINO's company written into the upcoming project. The Lighting Contractor told PINO that in order for PINO to get such a contract, PINO would need to "take care of" the public official.   PINO agreed to "take care of" the public official.

6.      On or about April 18, 2012, the Lighting Contractor told PINO that Broward County was looking to replace 1400 or more light poles over the next five years, and that the BCTED Public Official could "spec" into the contract the light poles from PINO's company. The Lighting Contractor told PINO that, in the past, he has done favors for this public official. The Lighting Contractor then asked PINO "how do you want to handle it?"   PINO advised that the easiest way to pay the BCTED Public Official was to "handle any transaction overseas."

7.      On or about May 2, 2012, the Lighting Contractor told PINO that the public official liked the idea of starting out with a job for fifteen-twenty (15-20) light poles.  PINO said that he was willing to pay the public official $250 a pole.  PINO suggested that a corporation could be set up in Costa Rica and the corporation would then open up a bank account and give the BCTED Public Official a debit card to withdraw the bribe money.  PINO said the scheme was not traceable.

8.      On or about May 24, 2012, the Lighting Contractor told PINO that the public official could arrange to have a purchase order written for $100,000 in light poles for PINO's

company.   PINO agreed to pay the public official before he (PINO) was paid, if the public

official first gave him the purchase order.

9.      On or about June 5, 2012, PINO told the Lighting Contractor that he would give

the public official five thousand dollars ($5,000) of U.S. currency in exchange for a purchase

order issued to PINO's company for $100,000 of light poles.

10.      On or about June 26, 2012, PINO and the Lighting Contractor arranged to meet

the next day with the BCTED Public Official at a restaurant in Plantation, Florida.  PINO advised

the Lighting Contractor that, prior to the meeting, he would meet the Lighting Contractor in the

restaurant parking lot and give the Lighting Contractor the $5,000 bribe payment for the BCTED

Public Official.

11.      On or about June 27, 2012, PINO met the Lighting Contractor in the restaurant

parking lot, and PINO gave the Lighting Contractor a large manilla envelope that contained a

brown letter-sized envelope and a brochure for one of PINO's products.  Inside the brown letter-

sized envelope was a bank envelope with $5,000 in U.S. currency.  PINO and the Lighting

Contractor then went into the restaurant and met the BCTED Public Official.  After some

discussion of engineering details and PINO's products, the BCTED Public Official handed PINO

a purchase order from Broward County for PINO's company to provide to Broward County

eighteen (18) decorative light poles at an approximate cost of  $100,000.  PINO reviewed the

purchase order, and the Lighting Contractor asked PINO if "we're good."  When PINO

responded "we're good," the Lighting Contractor slid the manilla envelope containing the $5,000

in cash across the top of the table to the BCTED Public Official.  After receiving the money, the

parties agreed that PINO could contact the BCTED Public Official directly and did not have to

4

go through the Lighting Contractor.  PINO and the BCTED Public Official then discussed the potential for future work for PINO's companies in Broward County.

## COUNT 1
(Bribery in Programs Receiving Federal Funds, 18 U.S.C. § 666)

1.    The General Allegations portion of this Information, paragraphs 1 through 11 inclusive, are realleged and expressly incorporated herein as if set forth in full.

2.    From on or about April 4, 2012 and continuing through on or about June 27, 2012, in Broward and Miami-Dade Counties in the Southern District of Florida, the defendant,

WILLIAM PINO,

did corruptly give, offer, and agree to give a thing of value, that is, $5,000 in U.S. currency, to an agent of the Broward County government, that is, the BCTED Public Official, intending to influence and reward the BCTED Public Official in connection with a transaction and series of transactions with Broward County, that is, the purchase of eighteen (18) decorative light poles by the BCTED, having a value of at least $5,000.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## FORFEITURE

1.       Paragraphs 1 through 11 of the General Allegations portion of this Information are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c).

2.       Upon conviction of the offense alleged in Count 1 of the Information, the defendant, **WILLIAM PINO**, shall forfeit to the United States any property, real and personal, which constitutes or is derived from proceeds traceable to such violation.  The property subject to forfeiture includes, but is not limited  to approximately $5,000.00, in U.S. currency, which represents the amount paid by the defendant in the violation alleged in Count 1 of this Information.

3.       Pursuant to Title 21, United States Code, Section 853(p), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

> (1)       cannot be located upon the exercise of due diligence;
>
> (2)       has been transferred, or sold to, or deposited with a third party;
>
> (3)       has been placed beyond the jurisdiction of the Court;
>
> (4)       has been substantially diminished in value; or
>
> (5)       has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable property.

6

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and the procedures outlined at Title 21, United States Code, Section 853.


_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY


_____
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

WILLIAM PINO,

                     Defendant.

_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| ___ Miami | ___ Key West | |
| _X_ FTL | ___ WPB | ___ FTP |

New Defendant(s)        Yes _____   No _____
Number of New Defendants
Total number of counts            _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)      __N__
   List language and/or dialect     _____

4. This case will take    __0__  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

(Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _X_ | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | _____ |
| III | 11 to 20 days | _____ | Misdem. | | _____ |
| IV | 21 to 60 days | _____ | Felony | | _X_ |
| V | 61 days and over | _____ | | | |

6. Has this case been previously filed in this District Court? (Yes or No)   __N__
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)  _____
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____    District of _____

   Is this a potential death penalty case? (Yes or No)   __N__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes  _X_ No

_____
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court jkA5500030

REV 4/8/08

\*Penalty Sheet(s) attached

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **WILLIAM PINO**

**Case No:** _____

Count #: 1

   Bribery in Programs Receiving Federal Funds

   Title 18, United States Code, Section 666(a)(2)

**\* Max. Penalty:**            10 years' imprisonment, $250,000 fine

   **\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | )    Case No. |
| WILLIAM PINO, | ) |
| | ) |
| *Defendant* | ) |

## WAIVER OF AN INDICTMENT

     I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

     After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

MICHAEL DUTKO
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*